```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/3/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL JOHN PEARSON, *as Administrator
of the Estate of Osama Ismail Abudawood in the
Cayman Islands*,

                     Petitioner,

        -v-                                 **OPINION & ORDER**
                                                    21-MC-770 (ALC) (JLC)
JEFFREY M. TRINKLEIN, *and*
GIBSON, DUNN & CRUTCHER LLP,

                     Respondents.
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

      Petitioner Michael Pearson has brought an application under 28 U.S.C. § 1782 seeking discovery from attorney Jeffrey Trinklein and his law firm, Gibson, Dunn & Crutcher LLP ("Respondents"), in connection with a foreign judicial proceeding pending in the Grand Court of the Cayman Islands. For the reasons which follow, the application is granted in part.[1]

---

[1] A motion seeking discovery under 28 U.S.C. § 1782 is a non-dispositive motion under Federal Rule of Civil Procedure 72(b). *See In re Hulley Enterprises, Ltd.*, 358 F. Supp. 3d 331, 340–41 (S.D.N.Y. 2019) (collecting cases). Nor does a Section 1782 discovery request fall under the excepted motions listed in 28 U.S.C. § 636(b)(1)(A). *Id.* at 341. Therefore, the Court issues an opinion rather than a report and recommendation to resolve the petition.

1

## I. BACKGROUND

**A. Facts**

The following facts are taken from the parties' submissions. Pearson was appointed by the Grand Court of the Cayman Islands ("the Grand Court") to administer the Cayman Islands portion of the Estate of the late Sheikh Osama Ismail Abudawood ("the Cayman Estate"). Petition ("Pet."), Dkt. No. 5, at ¶¶ 2, 10. Sheikh Osama was a citizen of the Kingdom of Saudi Arabia and died there on June 13, 2017. *Id.* ¶ 11. Sheikh Osama was the director of the Abudawood Group, a group of companies that marketed and sold consumer products in various regions of the world. *Id.* He died intestate, and is survived by his widow, Eleanor De Leon ("De Leon"), his daughter, Alaa Abudawood ("Alaa"), and his brothers Ayman Ismail Abudawood ("Ayman") and Anas Ismail Abudawood ("Anas"), among others. *Id.* ¶ 12. De Leon's and Alaa's intestate share of the estate totals 24.305% collectively. *Id.*

One issue in the ongoing Cayman Islands proceedings to administer the Cayman Estate is whether Sheikh Osama's ownership interests in the Cayman Islands companies of the Abudawood Group should be transferred to his heirs in cash or *in specie*. *Id.* ¶ 14. In the Cayman Islands proceedings, De Leon has alleged that on or about May 22–23, 2017, Sheikh Osama, his brothers, and his heirs entered into oral and written agreements for the purchase of her and Alaa's inheritance shares for their fair value. *Id.* ¶ 13. De Leon also alleged that Sheikh Osama communicated his intentions to various family members and professional

2

advisors before such a buyout agreement was made. Pet. ¶ 13. She has also alleged that after Sheikh Osama's death, the "interested parties" entered into a buyout agreement or engaged in discussions and negotiations to effectuate a pre-death agreement. *Id.* Sheikh Osama's brothers Ayman and Anas dispute this, and deny the existence of any buyout agreement. *Id.*[2]

On November 5, 2020, the Grand Court authorized and directed Pearson to conduct a preliminary investigation as to the existence of the alleged buyout agreement. *Id.* ¶¶ 10, 15. Pearson contends that during the course of his investigation, he "obtained evidence suggesting that Mr. Trinklein and Gibson Dunn are material witnesses on the issue of whether or not a buyout agreement was created." *Id.* ¶ 16. Trinklein is a partner in the New York and London offices of Gibson Dunn. *Id.* ¶ 6. Trinklein first met Sheikh Osama in 1991 and has represented him, his brothers, and various Abudawood Group companies for more than 27 years. Pet. ¶ 17(a)(i), (ii). In late 2017 and early 2018, Trinklein participated in meetings with De Leon's counsel in California in an attempt to reach a resolution of the disputes between De Leon, Alaa, and Sheikh Osama's brothers regarding De Leon and Alaa's inheritance shares. *Id.* ¶ 17(a)(iii).

---

[2] The Cayman Islands proceedings are not the only ongoing proceedings regarding the distribution of Sheikh Osama's estate. De Leon has filed an action in the Central District of California, *Eleanor De Leon v. Ayman Ismail Abudawood, et al.*, No. 8:18-CV-130 (JLS)(JDE) (the "California Federal Action"). Declaration of Michael J. Pearson dated October 12, 2021 ("Pearson Decl."), Dkt. No. 6, ¶ 19. The Prayer for Relief in the Second Amended Complaint in that action includes the following: "Specific performance of the oral agreement to buy out de Leon and [Alaa's] interests at fair market value[.]" Reply Declaration of Michael J. Pearson ("Pearson Reply Decl."), Dkt. No. 17, Ex. 1 at 50.

Based on Trinklein's longstanding relationship with Sheikh Osama and the representations made in his declaration filed in support of Defendants' motion to dismiss in the California Federal Action, Pearson contends that Trinklein and Gibson Dunn are "likely to have relevant evidence concerning (a) Sheikh Osama's expressed intentions and plans for the disposition of portions of his estate" to De Leon and Alaa, and "(b) whether those intentions led to the creation of a buyout agreement." Pet. ¶ 19; *see also* Pearson Decl. Ex 4, Dkt. No. 6-4. To that end, on April 26, 2021, Pearson, through his counsel, sent a letter to Respondents seeking to obtain evidence on these issues, but did not receive a response. *Id.* ¶ 20.

**B. Application in this Court & Procedural History**

On October 12, 2021, Pearson filed an *ex parte* application in this Court, seeking an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in the Cayman Islands proceedings. *See* Pet.; Memorandum of Law ("Pet. Mem."), Dkt. No. 7. Specifically, Pearson seeks document production and deposition testimony from Respondents to obtain evidence related to Sheikh Osama's expressed intentions regarding the disposition of his estate and whether a buyout agreement exists. Pet. ¶ 28; p. 9.[3]

On November 19, 2021, Respondents filed their opposition papers, arguing that the petition improperly seeks privileged materials and that certain discretionary factors weigh against ordering the sought-for discovery. Respondents'

---

[3] The proposed subpoenas to these non-parties are attached as an exhibit to the Pearson Declaration. Pearson Decl. Ex. 8, Dkt. No. 6-8.

4

Memorandum of Law in Opposition ("Resp. Opp."), Dkt. No. 12, at 13–15; 19–24. Pearson filed reply papers on December 20, 2021. Reply Memorandum of Law ("Pet. Reply"), Dkt. No. 16; Pearson Reply Decl. On December 22, 2021, the application was referred to me for resolution. Dkt. No. 18.

On March 24, 2022, the Court directed the parties to engage in "a meaningful meet and confer to see if they can resolve or at least narrow the issues presented by the pending motion." Dkt. No. 19. After the parties were unable to fully resolve their dispute, the Court held oral argument on April 4, 2022. At the conclusion of oral argument, the Court directed the parties to continue to meet and confer on the following issues: (1) the waiver of attorney-client privilege; (2) the scope of the documents to be searched, including the time frame to be searched and a set of search terms; (3) whether Trinklein would supplement his declaration submitted in opposition to the petition; (4) whether Trinklein's deposition would still be required; and (5) the impact, if any, of the California Federal Action on this application. On April 8, 2022, the parties filed a supplemental letter addressing these outstanding issues, but the dispute remains unresolved. Dkt. No. 22.

## II. DISCUSSION

**A. Legal Standards**

Under 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." Section 1782 has been read to impose three statutory requirements:

> (1) that the person from whom discovery is sought reside (*or be found*) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or "any interested person."

*In re Edelman*, 295 F.3d 171, 175–76 (2d Cir. 2002) (quoting *In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996)). "Additionally, the statute requires that the discovery not be 'in violation of any legally applicable privilege.'" *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (quoting 28 U.S.C. § 1782(a)); *see also In re Guo*, 965 F.3d 96, 102 n.3 (2d Cir. 2020) ("While our case law has often focused on the[] three elements" stated above, "the statute also imposes other requirements, including that the discovery not be 'in violation of any legally applicable privilege'") (citation omitted).

"Once a district court is assured that it has jurisdiction over the petition, it 'may grant discovery under § 1782 in its discretion.'" *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)). The Supreme Court has outlined four factors (known as the *Intel* factors) that a district court should consider when determining whether to exercise its discretion to grant Section 1782 discovery. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). A court should look at (1) whether the target of discovery is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings, and the tribunal's receptiveness to U.S. federal court assistance; (3) whether the application is attempting to "circumvent foreign proof-gathering restrictions," and (4) whether the request is

6

"unduly intrusive or burdensome." *See id.* at 264–65; *see also In re Batbold*, No. 21-MC-218 (RA) (OTW), 2021 WL 4596536, at *2 (S.D.N.Y. Oct. 6, 2021).

### B. Analysis

#### 1. Parties' Arguments

The parties do not dispute that the three "statutory requirements" of Section 1782 are satisfied in this case. *See* Pet. Mem. at 8–11; Resp. Opp. at 12. However, Respondents contend that Pearson's application improperly seeks privileged attorney-client communications between Sheikh Osama and Trinklein, and that Pearson "cannot establish any right to succeed or waive the privilege of Osama or any other Gibson Dunn client." Resp. Opp. at 13; *see generally* Resp. Opp. at 13–19. Pearson, relying on Proposed Federal Rule of Evidence 503(c), counters that because he is the personal representative of the Cayman Estate, he has the authority to waive Sheikh Osama's attorney-client privilege. Pet. Reply at 9–11.[4]

With respect to the discretionary *Intel* factors, Respondents invoke only the fourth factor and contend that the application is "unduly intrusive or burdensome" because (1) it seeks discovery from a lawyer and law firm; (2) no buyout agreement exists; (3) all relevant information has already been provided to Pearson (through Trinklein's declaration) or to De Leon, who had been appointed administrator of Sheikh Osama's United Kingdom Estate and to whom Respondents produced approximately 3000 pages regarding evidence of a buyout agreement ("the De Leon

---

[4] Proposed Rule of Evidence 503(c) states in relevant part that the attorney-client privilege "may be claimed . . . by the personal representative of a deceased client." Proposed Fed. R. Evid. 503(c).

7

production"); (4) Pearson could seek this discovery from other parties to the Cayman Islands proceedings; (5) the discovery sought is beyond the scope of Pearson's authorized investigation and unlimited in time frame; and (6) the discovery sought is against the interests of justice. Resp. Opp. at 19–25.

### 2. Application

"[I]f the district court determines that a party's discovery application under Section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto . . . ." *In re Alghanim*, No. 17-MC-406 (PKC), 2018 WL 2356660, at *4 (S.D.N.Y. May 9, 2018) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995)). Alternatively, "[t]he Court has the authority to narrow the scope of a subpoena upon a showing of undue burden." *Id.* (citing *In re Mangouras*, No. 17-MC-172 (PKC), 2017 WL 4990655, at *9 (S.D.N.Y. Oct. 30, 2017)).

In this case, notwithstanding Respondents' contention that the proposed subpoena is unduly burdensome, the parties have met and conferred at the Court's direction after briefing concluded and have narrowed the issues in dispute.[5] The issues that remain are as follows: (1) whether Pearson can waive Sheikh Osama's attorney-client privilege; (2) the date range of documents to be searched; and (3) the need for Trinklein's deposition.

---

[5] Based on the parties' most recent joint letter, Dkt. No. 22, the parties are continuing to meet and confer on the scope of the Abudawood Group files to be searched and the search terms that will be applied to those files.

As a threshold matter, with respect to whether Pearson can waive Sheikh Osama's attorney-client privilege, the Court believes it is unnecessary to reach this issue at this time.[6]  As the parties' briefs and the Court's own research reveals, the question of whether a court-appointed administrator of a decedent's estate assumes the decedent's privilege has not yet been addressed in this Circuit.[7]  Moreover, Respondents have indicated their willingness to produce to Pearson the 3000 pages previously produced to De Leon in her capacity as administrator of the U.K. estate. *See* Oral Argument Tr. 22:5-14; Dkt. No. 22 at 2.  As Respondents acknowledged at oral argument, these pages include materials that would ordinarily be shielded by attorney-client privilege.  Oral Argument Tr. 36:1-11; 37:2-7.  Thus, to at least some extent, Respondents are willing to waive privilege for the purpose of making this production.

In addition, while Pearson initially contended that the De Leon production in the U.K. was culled from only a "small subset" of potentially relevant documents, Dkt. No. 20 at 1, during the parties' subsequent meet and confer, Pearson identified

---

[6] The Court also declines to reach the issue of whether there is any applicable corporate attorney-client privilege with respect to communications Sheikh Osama, acting as a director of the Abudawood Group, may have had regarding a buyout agreement.  This issue would be more appropriately adjudicated with respect to particular documents that raise a question about whether Sheikh Osama was acting as an Abudawood Group director or in his personal capacity as a husband and father when engaging in particular communications about a buyout agreement.

[7] Unlike the other cases on which he relies to argue that he holds and can waive Sheikh Osama's privilege, Pet. Reply at 9–11, Pearson is a court-appointed administrator, rather than an executor, and is entirely unaffiliated with Sheikh Osama.  The parties have not cited to, and the Court has not independently found, a case in which a court-appointed administrator who is entirely unaffiliated with the decedent may assume and waive the decedent's attorney-client privilege.

only eight additional Abudawood Group files (out of more than 150 total) that were not previously searched as part of the De Leon production and that may contain documents relevant to the buyout agreement. Dkt. No. 22 at 1. This suggests that the De Leon production, coupled with a potential supplemental production after Respondents run Pearson's proposed search terms through any additional Abudawood Group files, may well be sufficient to satisfy Pearson's document requests at this time.[8]

Similarly, with respect to the need for Trinklein's deposition, it is the Court's view that the Trinklein declaration submitted with Respondent's opposition papers (Dkt. No. 13), coupled with Trinklein's supplemental declaration (Dkt. No. 22-1), is sufficient to satisfy Pearson's discovery requests at this time. The supplemental declaration, Dkt. No. 22-1, addresses the Court's concerns raised at oral argument regarding the scope and content of Trinklein's knowledge of any buyout agreement. Oral Argument Tr. 34:5-35:17. Moreover, during oral argument, Respondents indicated a willingness for further meet and confers to allay Pearson's concerns about whether Trinklein's wording in the declarations was intentionally opaque. *Id.* at 37:13-21. Pearson argues that the supplemental declaration "did *not* deny that there were communications with Sheikh Osama about the alleged buyout agreement or his estate plan[.]" Dkt. No. 22 at 3. However, the declaration clearly

---

[8] Notably, Pearson has thus far declined to review the 3000 pages from the De Leon production, and has therefore not articulated with any specificity why they do not satisfy his document requests. *See* Oral Argument Tr. 17:23-18:17. Pearson has apparently requested De Leon's consent to review this production. Dkt. No. 22 at 2.

10

states that Trinklein "did not prepare, witness, or learn of any agreement, whether written or oral" concerning De Leon's and her daughter's inheritance, and that he is not aware of any oral or written buyout agreement among any of Sheikh Osama's heirs, Dkt. No. 22-1 ¶ 3.  Trinklein has similarly suggested as much in the California Federal Action.  Pearson Decl. Ex. 4 ¶ 24.  To the extent Pearson argues that he requires further evidence to satisfy his investigatory charge from the Cayman Islands Court, such an argument is premature and would be more appropriate once Pearson reviews the documents in the De Leon production (and any supplemental production) and can identify any particular gaps that those documents, taken together with the Trinklein declarations, do not address.

Lastly, with respect to the date range that will apply to Respondents' document search, the parties have now agreed to a beginning date of January 1, 2012, but disagree regarding the end date.  Dkt. No. 22 at 2.  Respondents propose an end date of June 13, 2017 (Sheikh Osama's date of death), while Pearson seeks non-privileged documents beyond Sheikh Osama's date of death (although they do not specify a proposed end date).  *Id.*  The parties do not appear to have met and conferred about whether applying Pearson's proposed search terms to any documents post-2017 would be unduly burdensome, *i.e.,* whether the search results are unreasonable in volume in light of the matters to be searched and the search terms used.  The parties are directed to do so and, assuming the production of any

11

non-privileged, post-2017 documents would not be unduly burdensome, Respondents are directed to produce any such documents to Pearson.[9]

In granting Pearson's application with the limitations described above, the Court has attempted to balance Sheikh Osama's attorney-client privilege interest with the comity interests in facilitating the ongoing proceedings in the Cayman Islands. *See, e.g., In re Evanstar Master Fund SPC*, No. 20-MC-418 (CS) (JCM), 2021 WL 3829991, at *12 (S.D.N.Y. Aug. 27, 2021) (courts must weigh policy and comity concerns in deciding Section 1782 petitions). Moreover, and as discussed during oral argument, the Court is mindful that Pearson is a third-party neutral gathering information on behalf of and at the direction of the Cayman Islands Court, rather than a litigant with a vested interest in a particular outcome. Oral Argument Tr. 19:7-21:21; 53:20-54:18. Finally, as discussed at oral argument, the Court is concerned about the various overlapping litigations regarding Sheikh Osama's estate, and, in particular, the California Federal Action, which, if it proceeds, would address the merits of whether an enforceable buyout agreement exists. Oral Argument Tr. 9:18-11:11; 66:24-67:11. Proceeding with discovery as described above will balance these interests and minimize the risk that this proceeding may interfere with other ongoing proceedings involving similar issues.

---

[9] The parties do not specifically mention whether there is a continued dispute regarding the scope of Pearson's subpoena. To the extent that dispute is ongoing, the Court notes that at oral argument, Pearson acknowledged that subpoena topic number 3 subsumed all the other topics. Oral Argument Tr. 25:25-27:14.

In the event the Cayman Islands Court is unsatisfied with Pearson's report on the discovery he receives from Respondents, Pearson may make a supplemental application for further discovery.

### III. CONCLUSION

For the foregoing reasons, Pearson's application for discovery pursuant to 28 U.S.C. § 1782 is granted in part. The Clerk is directed to close Docket No. 5 and mark it as "granted in part."

**SO ORDERED.**

Dated: May 3, 2022
New York, New York

_____
JAMES L. COTT
United States Magistrate Judge